# IN THE COURT OF APPEALS OF IOWA

No. 20-1630
Filed January 27, 2022

**IMERE DE'JON HALL,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J.
Shubatt, Judge.

Imere Hall appeals the dismissal of his application for postconviction relief.
**AFFIRMED.**

Richard Hollis, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney
General, for appellee State.

Considered by May, P.J., Ahlers, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**MAY, Judge.**

Imere Hall appeals the dismissal of his postconviction-relief (PCR) action. We affirm.

**I. Factual Background**

"In the early morning hours of April 2, 2016, Tacari Minifee shot and killed Collin Brown." *State v. Hall*, No. 17-0570, 2018 WL 4635685, at *1 (Iowa Ct. App. Sept. 26, 2018). "Imere Hall was at the scene of the crime." *Id.* The State charged Hall with first-degree murder and first-degree robbery. As to both counts, the jury found Hall guilty as an aider and abettor. *Id.* at *2. Hall appealed, and our court affirmed. *Id.* at *6. Our opinion included this summary of the record:

> Hall testified at his trial. There, he told the jury the following transpired the night Collin Brown was murdered.
> In the late night hours of April 1, 2016, Hall, then eighteen years old, went with Tacari Minifee and Eric Campbell to buy marijuana from Collin Brown. Minifee and Campbell were members of the Dead Money gang, of which Hall was not a member. Hall's friend, Taylor Shaw, drove Hall, Minifee, and Campbell to Brown's neighborhood, but they were unsure of where Brown's home was located. The group then went to a McDonald's restaurant and ate, and Minifee called someone that knew where Brown lived. A car, driven by Savanna Stotlar, arrived at McDonald's, and Shaw, with Hall, Minifee, and Campbell as passengers, followed Stotlar's car to Brown's home in the early morning hours of April 2. Shaw parked the car a distance from Brown's home.
> Hall walked up to Brown's door with Minifee and Campbell. Campbell kicked in Brown's door and pulled out a gun. Minifee also had a gun. Hall proceeded inside with Minifee and Campbell.
> Brown and his girlfriend, Alecea Lombardi, were inside the home when the three men entered. Minifee and Campbell sought out Brown, and Hall went to Lombardi, who was upset. Hall knew Lombardi and was attempting to calm her when Campbell came to them, pointed his gun at Lombardi, and demanded money. Lombardi grabbed her purse from the couch and gave it to Campbell. Meanwhile, Brown jumped out the window and Minifee pursued him.
> Hall fled Brown's home with Campbell, running for the getaway car. While running, Hall saw Brown and someone pursuing Brown but continued to Shaw's car. Then Hall heard two gunshots.

Hall got to Shaw's car and told her to go. Minifee then got in Shaw's car, and they drove way.

The next morning, Shaw, Minifee, and Hall were found at Shaw's home and taken in by the police for questioning. Hall admitted he was untruthful with law enforcement officers concerning his connection to the previous night's activities. Hall explained he was afraid both he and Shaw were in danger because they knew Minifee, a gang member, had killed Brown.

Lombardi also testified and gave a different account. Lombardi testified that after the door was kicked in, three men burst in; one tall, one medium height, and one short. All were wearing dark clothing, had bandanas covering their faces, and hoods over their heads. All had guns. The shorter man came over to her while the other two men beat up Brown. The man who came to her "kept telling [her] that [her and her] kids were going to be okay." She said this person held a gun to her head.

Lombardi testified the tall man came over to her and demanded money, so she got up and got her purse from the couch. She took out her wallet to remove the cash, and the man just took her wallet. Lombardi heard Brown say, in a kind of disguised voice, "Police 9-1-1," and everyone just left. Lombardi ran to check on her children, and then she heard gunshots. She then called 9-1-1.

Shaw, driver of the getaway car, testified Campbell gave her directions to Brown's home but could not find it. The group went to McDonald's and someone was called to assist them in locating Brown's home. Stotlar arrived at the McDonald's, and Shaw followed Stotlar's car to Brown's home. When they got to Brown's home, Stotlar tapped her brake lights to signal they were at the right place. Shaw parked the car some distance from the home. Hall, Minifee, and Campbell then got out of the car and walked toward Brown's home. Shaw turned the car around, switched the lights off, but kept the motor running. After a couple of minutes, Campbell got in the car, and Hall followed as gunshots went off. Shaw started to drive off but waited for Minifee. Once Minifee got in the car, Shaw drove fast from the scene.

*Id.* at *1–2 (alterations in original).

Soon after Hall's appeal was completed, Hall filed this PCR action claiming he received ineffective assistance of counsel. Following trial, the PCR court denied Hall's application. Hall appeals.

**II. Standard of Review**

"We review claims of ineffective assistance of counsel de novo." *King v. State*, 797 N.W.2d 565, 570 (Iowa 2011). "In conducting our de novo review, 'we give weight to the [PCR] court's findings concerning witness credibility.'" *Id.* at 571 (citation omitted).

**III. Analysis**

Hall claims the PCR court erred in failing to find trial counsel was ineffective by (1) not filing a motion in limine regarding gang affiliation and (2) conceding too much in opening statements. Hall also claims PCR counsel was ineffective for failing to raise an additional theory of ineffective assistance below.

"To establish [a] claim of ineffective assistance of counsel, [the applicant] must show [their] trial counsel failed to perform an essential duty and counsel's failure resulted in constitutional prejudice." *State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019). "The [applicant] must prove both elements by a preponderance of the evidence." *State v. Madsen*, 813 N.W.2d 714, 724 (Iowa 2012).

To establish breach of an essential duty, the applicant must prove counsel "perform[ed] below the standard demanded of a reasonably competent attorney." *State v. Haas*, 930 N.W.2d 699, 703 (Iowa 2019) (citation omitted). "In analyzing the [applicants]'s claims, we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'" *Id.* (citation omitted). So the applicant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

"To establish constitutional prejudice, the [applicant] is required to show 'that counsel's errors were so serious as to deprive the [applicant] of a fair trial, a trial whose result is reliable.'" *Walker*, 935 N.W.2d at 881 (citation omitted). "It is not enough for the [applicant] to show that the errors had [only] some . . . effect on the outcome of the proceeding." *Id.* (second alteration and omission in original) (citation omitted). "Rather, '[t]he [applicant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (first alteration in original) (citation omitted).

When the applicant fails to show constitutional prejudice, it is not necessary for the court to decide whether counsel breached a duty. *See id.*; *King*, 797 N.W.2d at 574 ("In this case, however, it is not necessary to decide the issue of whether King's counsel provided inadequate assistance because, upon our review of the entire record, we conclude that King has failed to show prejudice as required under the *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] test.").

We begin with Hall's claims relating to his trial counsel and then consider his claims relating to PCR counsel.[1]

---

[1] Hall also asserts a constitutional challenge to Iowa Code section 822.3A (supp. 2019), which prohibits pro se filings by PCR applicants who are represented by counsel. We think these challenges are foreclosed by the supreme court's decision in *Hrbek v. State*, 958 N.W.2d 779, 787 (Iowa 2021).

But Hall also suggests there is a conflict between sections 822.3 and 822.6—both of which seem to anticipate pro se filings—and section 822.3A. We see no conflict. Section 822.3A does not prohibit *all* pro se filings. Rather, it only forbids pro se filings by applicants who are "currently represented by counsel." Iowa Code § 822.3A. Applicants who forego counsel are still free to make pro se filings.

**A. Motion in Limine**

Hall argues that his trial counsel breached an essential duty by failing to file a motion in limine to exclude evidence about gang membership. We disagree. The State offered no evidence about gangs. Rather, it was Hall who brought up gang membership to distinguish himself from the other participants. It was Hall who introduced evidence that—although *other* participants were affiliated with the Dead Money gang—Hall was *not*.

More particularly, the State notes, Hall "brought out other people's gang membership" to suggest Hall was "an unknowing participant in the robbery," which had been planned by two gang affiliates, Campbell and Corby Yager. Non-gang-member Hall "wasn't a part of any of that" robbery planning, his counsel emphasized. Rather, as Hall testified, Hall thought the trip to Brown's house was just about buying marijuana.

In addition, counsel used the gang issue to explain Hall's post-robbery behavior. For instance, counsel explained Hall's dishonesty with police by arguing Hall was "scared" of the other participants—who "are a bunch of gang members." "Snitches fill ditches," counsel reminded the jury.

In short, gang issues played an important part in the defense strategy. And we agree with the State that trial counsel had "no duty to hamstring the defense's trial strategy" by seeking exclusion of gang-related evidence. Moreover, and in any event, because the State offered no gang evidence, Hall cannot show he was prejudiced by counsel's failure to seek exclusion of gang evidence.

**B. Opening Statement**

Hall next argues that his trial counsel was ineffective because he conceded too much in the opening statement. The transcript of the opening statement reads:

> Thank you, Your Honor. May it please the court. Counsel. The man that shot and killed Collin Brown is not on trial today. You are not going to have the opportunity to look at his cold glare as he stares down the witnesses in this case. The man who masterminded this robbery the State has talked about is also not on trial today. You're not going to have the opportunity to look at his calculating face as the State lays out evidence against him.
>
> The defense in this case is not contesting that Tacari Minifee shot and killed Collin Brown. The defense in this case is not contesting that. The defense in this case is not contesting that Collin Brown died as a result of the shots that Tacari Minifee fired.
>
> As the evidence comes in in this case, we'll just ask you to keep an open mind until you have received all of the evidence, and after you've received all of the evidence, remember the few words that I've spoken here as we come back before you and ask for a verdict of not guilty on both counts. Thank you.

Hall argues that this succinct opening statement implied Hall was at the scene of the crime. And this, Hall says, amounts to a concession of Hall's guilt.

We disagree. Like the PCR court, we do not think trial counsel's concise opening statement implicated Hall in the crime or even placed him at the scene. For instance, although counsel said Hall "is not contesting" Minifee shot Brown, that statement does not remotely imply that Hall actually *saw* Minifee shoot Brown. It only means that Hall "is not contesting" the issue. So we find no breach of any essential duty. Nor do we believe Hall was prejudiced. There was ample evidence Hall was at the scene, including his own testimony.

**C. Ineffective Assistance of PCR Counsel**

Hall next argues his PCR counsel was ineffective by failing to argue that trial counsel was ineffective by eliciting evidence that other participants in the robbery-murder were gang affiliated. We disagree.

We again note the weight of Hall's burden. We emphasize that, in evaluating Hall's claim, "we 'must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [Hall] must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.'"" *Haas*, 930 N.W.2d at 703 (citation omitted).

We do not believe Hall has carried these heavy burdens. As noted, counsel used Hall's non-gang-member status to distance Hall from the other gang-affiliated participants; to suggest Hall was an innocent bystander who thought he was going to a simple marijuana buy, not a gang-planned robbery and murder; and to explain Hall's post-robbery behavior, including his lack of candor with police. These efforts could have helped Hall. Of course, as Hall argues, these efforts may have also involved some risk—including risk that the jury would penalize Hall for associating with gang members even though the undisputed evidence showed that Hall was not a member. But many sound strategies entail risk. And given the formidable evidence confronting Hall, we believe that trial counsel's approach "might be considered sound trial strategy." *Id.* (citation omitted). It did not fall outside "the wide range of reasonable professional assistance." *Id.* (citation omitted). It was not a breach of an essential duty. Likewise, PCR counsel breached no duty by failing to claim trial counsel was ineffective for pursuing the gang strategy.

**D. Cumulative Error**

Finally, Hall argues he is entitled to relief based on a cumulative-error theory. As discussed above, though, we have found no merit in Hall's ineffective-assistance claims individually. So we find no cumulative error, either.

Note also: This is not a case in which "the [applicant] raise[d] one or more claims of ineffective assistance of counsel, and the court analyze[d] the prejudice prong of *Strickland* without considering trial counsel's failure to perform an essential duty." *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). Rather, as to each of Hall's claims on appeal, we *have* considered whether counsel failed to perform an essential duty—and we have found no failures. So, unlike in *Clay*, there is no need to consider whether multiple "alleged" breaches may have cumulatively produced *Strickland* prejudice. *Id.*

**IV. Conclusion**

Hall has failed to show trial or PCR counsel was ineffective. We affirm.

**AFFIRMED.**